# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JUSTIN HATTEN, | : | |
| Petitioner, | : | Case No. 3:11cv000324 |
| vs. | : | District Judge Timothy S. Black |
| | | Magistrate Judge Sharon L. Ovington |
| WARDEN, Chillicothe Correctional Institution, | : | |
| | : | |
| Respondent. | : | |
| | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Petitioner Justin Hatten brings this habeas corpus case through counsel challenging his conviction in state court on one count of kidnapping.  He is presently incarcerated in state custody serving a four-year sentence.

The case is before the Court upon Hatten's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. # 2), Respondent's Answer/Return of Writ (Doc. # 7), and Hatten's Traverse and Supplemental Traverse (Doc. #s 9, 10), Respondent's Response (Doc. # 11, PageID at 1649-54), and the record as a whole.

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Hatten seeks a writ of habeas corpus "that he may be discharged from his unconstitutional conviction."  (Doc. #2, PageID at 17).

## II.     Background

### A.     State Court Proceedings

In August 2008, a grand jury in the Court of Common Pleas for Champaign County, Ohio indicted Hatten on one count of rape of a person substantially impaired, one count of rape by force, one count of kidnapping (with a sexual-motivation specification), one count of abduction, and one count of sexual battery.  During his trial, the prosecution dismissed the sexual-motivation specification attached to the kidnapping charge.  (Doc. #7, Exh. 12, PageID at 220-21).

The jury acquitted Hatten of three charges:  rape by force, sexual battery, and abduction.  But, as noted previously, the jury found him guilty of kidnapping.  The jury also found Hatten guilty of rape of a person substantially impaired.  (Doc. #7, Exhibits 1, 2, 6).

Hatten, through counsel, filed a direct appeal in the Ohio Court of Appeals, raising a number of challenges to his convictions.  He asserted, most prominently, that the evidence was insufficient to support either of his convictions.  The Ohio Court of Appeals agreed, in part, with Hatten and vacated his conviction on the charge of rape of a substantially impaired victim.  *State v. Hatten*, 186 Ohio App.3d 286, 293-98 (2010); *see* Doc. #7, Exh. 12, PageID at 223-29.

2

As to Hatten's kidnapping conviction, he contended, "The State of Ohio failed to introduce sufficient evidence to sustain a conviction in violation of [his] right to due process of law as guaranteed by Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment of the United States Constitution."  (Doc. #7, Exh. 9).  In support of this argument, Hatten relied on *Jackson v. Virginia*, 443 U.S. 307 (1979) and other cases.

Before addressing Hatten's contentions, the Ohio Court of Appeals explained the factual background of his case as follows:

> Late on the evening of July 3, 2008, A.R. consumed two shots of tequila and one beer before going to a local bar with her roommate, K.R. At the bar, A.R. drank half a pitcher of beer and four more shots of alcohol. Coincidentally, the women's neighbor, Hatten, and two of his friends, C.M. and R.H., were drinking at the same bar. The women thought that they recognized their neighbor, but there is no evidence that Hatten saw the women there.

> The young women returned to their home at about 1:30 a.m. They got something to eat and began watching a movie. About 90 minutes later, C.M. knocked on their door, intending to invite the women to Hatten's home. Changing his mind, he merely asked where Hatten lived.  A.R. directed him next door and returned to watching the movie. Minutes later, Hatten came to A.R.'s door to apologize for any inconvenience, and he invited the women to his home to play a video game and have a few drinks. A.R. and K.R. agreed, and they took a case of beer with them to Hatten's home.

> A.R. and K.R. introduced themselves to Hatten, C.M., and R.H. The women soon returned to their home for tequila, vodka, and lemons, which they brought back to Hatten's home. They consumed a shot of alcohol and began playing a video game, during which time A.R. drank another beer. After playing for a while, the women decided to leave. They went to a local store for ice cream before returning home to finish watching the movie that they had started earlier.

At about 4:00 a.m., Hatten knocked on the door and asked A.R. whether she would like to come back to his home to watch a movie. She agreed. While A.R., Hatten, C.M., and R.H. were watching the movie, A.R. drank another beer. At some point, A.R. decided to leave, so she started walking toward the door. Hatten followed her, and he blocked the door with his arm. He told A.R. that he was lonely and just wanted her to stay and "cuddle" with him. She testified that she reluctantly agreed.

The two talked and watched the movie. According to A.R., Hatten suddenly stood up, grabbed her arm, and pulled her down the hall to his bedroom. The bedroom door remained open as A.R. and Hatten lay on the bed to "cuddle."  A.R. testified that Hatten then rolled on top of her, straddling her hips, so that she could not get away from him. While in that position, Hatten removed her pants and panties, placed a condom on his penis, and had sexual intercourse with her without her consent.  A.R. never yelled for help from either C.M. or R.H.  Immediately afterwards, A.R. fled to her own home, leaving her clothes behind.

At approximately 6:15 a.m., K.R. awoke to the sound of A.R. crying. After hearing what had happened, K.R. contacted her mother, T.R., and they convinced A.R. to go to the hospital. Nurse Jennifer Lutz saw A.R. shortly after 7:00 a.m. She described A.R. as crying steadily, sobbing, and inconsolable. Because A.R. was going to transfer to another hospital to be seen by a Sexual Assault Nurse Examiner ("SANE nurse"), Lutz's exam was very brief.  A.R. told Lutz that she had not been drinking. An emergency-room doctor briefly examined A.R., and finding her very upset and difficult to communicate with, he prescribed one milligram of Ativan, in order to help her calm down.

The record does not reflect how A.R. got to the second hospital, but at approximately 9:30 a.m., A.R. was seen by SANE nurse Karen Sneed. A.R. admitted to having consumed three beers and two shots, but Sneed believed that A.R. appeared to be sober enough to consent to medical treatment.  A.R. remained very tearful and sobbing. Sneed observed evidence of blunt-force trauma to A.R.'s vaginal area, which was consistent with the recent occurrence of sexual contact.

Urbana Police Officer Molton briefly spoke with A.R. at the first hospital before proceeding to Hatten's home with Lieutenant Lingrell, arriving between 8:00 and 9:00 a.m.  Officer Molton questioned Hatten at his front door. Unbeknownst to Hatten, the conversation was recorded.

4

Hatten agreed with A.R.'s version of events up until the point at which she claimed that he would not let her leave, though he did admit that what she said was "more or less" true.

Hatten repeatedly admitted that he and A.R. had "fooled around" and "messed around," but he consistently insisted that things only "went as far as she wanted [them] to go" and that he "did not do anything wrong." He refused to explain what he meant when he said that they "fooled around" and "messed around," and he claimed that he could not remember whether they had engaged in sexual intercourse. Hatten refused to allow the officers to search his home. Because he would not allow any officers to wait in his home while a search warrant was secured, Hatten was detained in the rear of a cruiser. Upon searching Hatten's home after the warrant was obtained, Officer Molton found A.R.'s pants and panties on the floor in Hatten's bedroom, near an empty condom wrapper.

Hatten was indicted ... and the case proceeded to trial.

Hatten called two witnesses in his defense, C.M. and R.H.  C.M. and R.H. described A.R. as being sexually aggressive toward Hatten. They saw her straddling Hatten's lap on the couch, kissing him. At no time did either man overhear any conversation or see any conduct that made them believe that Hatten prevented A.R. from leaving or that she remained in Hatten's home against her will.  R.H. testified that he saw A.R. and Hatten walking to the bedroom, holding hands, not long before he and C.M. left.

*Hatten*, 186 Ohio App.3d at 291-93; *see* Doc. #7, Exh.12, PageID at 217-21.

The Ohio Court of Appeals found no merit in Hatten's challenge to the sufficiency of the kidnapping evidence and affirmed his kidnapping conviction.  *Hatten*, 186 Ohio App.3d at 298-300; *see* Doc. #7, Exh. 12, PageID at 229-31.

After filing an unsuccessful motion for reconsideration (Doc. #7, Exh. 15), Hatten proceeded to the Ohio Supreme Court.  He re-asserted (in part) his contention that the evidence was insufficient to support his kidnapping conviction, but to no avail.  The Ohio Supreme Court declined to exercise jurisdiction over his appeal.

5

Hatten also litigated – without success – an Application to Reopen his appeal in the Ohio Court of Appeals based in a claim of ineffective assistance of appellate counsel. He did not seek further review of this claim in the Ohio Supreme Court.

### B.     Hatten's Federal Habeas Corpus Petition

Hatten's habeas petition raises one ground for relief:

> Petitioner was denied due process of law in violation of the Fifth Amendment to the federal [Constitution] made applicable to the States by the Fourteenth [Amendment] when the State failed to produce sufficient evidence to support a kidnapping conviction.

(Doc. #2, PageID at 8) (capitalization omitted).

Hatten's habeas petition seeks an order allowing him to conduct discovery and "to expand the record relating to the issues raised by [his] Petition." *Id*., PageID at 17. He also asks for a "hearing at which proof may be offered concerning the allegations in [his] petition that Respondent does not admit." *Id*. And, ultimately, he seeks a writ of habeas corpus.

Respondent contends that Hatten's sole ground for relief lacks merit under the deferential standards required by *Jackson v. Virginia*, 443 U.S. 307 (1979) and the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).

### III.    Discussion

### A.     The AEDPA and Jackson v. Virginia

The AEDPA applies to Hatten's habeas petition. *See Strouth v. Colson*, 680 F.3d 596, 600 (6th Cir. 2012) (and cases cited therein). As a result, his claim of

constitutionally insufficient evidence is not reviewed de novo. *See Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848 (2003). Instead, habeas relief is available to Hatten if the Ohio Court of Appeals' rejection of his claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Greene v. Fisher*, __ U.S. __, __, 132 S.Ct. 38, 42 (2011). This standard "is 'difficult to meet,' because the purpose of AEDPA is to ensure that federal habeas relief functions as a 'guard against extreme malfunctions in the state criminal justice systems,' and not as a means of error correction." *Greene*, __U.S. at __, 132 S. Ct. at 43 (citations omitted).

"A state-court decision is contrary to clearly established federal law only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc) (quoting in part *Williams v. Taylor*, 529 U.S. 362, 407-08, 120 S.Ct. 1495 (2000) (other citations omitted)). "A state-court decision is an unreasonable application of clearly established federal law if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Williams,* 529 U.S. at 407-08, 120 S.Ct. 1495 (other citation omitted)); *see Harrington v. Richter*, __U.S. __, 131 S.Ct. 770, 785-86 (2011).

Clearly established federal law concerning a claim of constitutionally insufficient

7

evidence appears in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).  *Jackson*

confirmed that "the Due Process Clause of the Fourteenth Amendment protects a

defendant in a criminal case from conviction 'except upon proof beyond a reasonable

doubt of every fact necessary to constitute the crime with which he is charged.'"  443

U.S. at 315, 99 S.Ct. 2781 (quoting, in part, *In re Winship*, 387 U.S. 357, 364, 90 S.Ct.

1068, 1073 (1970)).  The governing legal test in *Jackson* "'is whether, after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt.'"  *Davis*, 658

F.3d at 531 (quoting *Jackson*, 443 U.S. at 319 (italics in *Jackson*)).  This test "is applied

to 'with explicit reference to the substantive elements of the criminal offense as defined

by state law.'"  *Davis*, 658 F.3d at 531 (quoting *Jackson*, 443 U.S. at 324 n.16).

Both *Jackson* and the AEDPA's deferential command apply to Hatten's

insufficient evidence claim, creating twofold deference:  "First, deference should be given

to the trier-of-fact's verdict, as contemplated by *Jackson;* second, deference should be

given to the [Ohio Court of Appeals'] consideration of the trier-of-fact's verdict, as

dictated by AEDPA."  *Davis*, 658 F.3d at 531; *cf. Garcia v. Andrews*, 488 F.3d 370, 374

(6th Cir. 2007) ("In applying AEDPA, we look to the last state-court decision on the

merits, which in this case is the decision of the Ohio Court of Appeals.").

## B. The Ohio Court of Appeals' Decision

The Ohio Court of Appeals set forth the standards applicable to Hatten's claim of

insufficient evidence in a manner consistent with – and not contrary to – *Jackson v. Virginia*.  This appears, at a minimum, through its recognition that "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Hatten*, 186 Ohio App.3d at 294; *see* Doc. #7, Exh. 12, PageID at 222 (citation omitted).  The Ohio Court of Appeals also cited and relied on an Ohio Supreme Court case – *State v. Jenks*, 61 Ohio St.3d 259, syll. paragraph 2 (1991) – which followed *Jackson's* standards.  *Hatten*, 186 Ohio App.3d at 294; *see* Doc. #7, Exh. 12, PageID at 222.  Hatten is therefore not entitled to habeas relief under 28 U.S.C. § 2254(d)(1)'s "contrary to" language.

Analysis of Hatten's *Jackson*-based claim thus hinges on §2254(d)(1)'s "unreasonable application" language, triggering twofold-deference:  (1) whether the jury's guilty verdict on Hatten's kidnapping charge was supported by sufficient evidence as contemplated by *Jackson's* deferential standards, and (2) whether the Ohio Court of Appeals unreasonably applied *Jackson's* standards when rejecting Hatten's insufficient evidence claim.  *See Davis*, 658 F.3d at 531.

The jury found Hatten guilty of kidnapping, a violation of Ohio Revised Code "[§] 2905.01(A)(4), which states:

> No person, by force, threat, or deception ... shall remove another [person] from the place where the other person is found or restrain the liberty of the other person, [in order to] engage in sexual activity ... with the victim against the victim's will.

*Hatten*, 186 Ohio App.3d at 298 (brackets in *Hatten*); *see* Doc. #7, Exh. 12, PageID at 229.

In the Ohio Court of Appeals, Hatten maintained that the prosecution had failed to present sufficient evidence to prove beyond a reasonable doubt that he used force to restrain A.R.'s liberty and, consequently, there was insufficient evidence of force to support his kidnapping conviction.  (Doc. #7, Exh. 19, PageID at 135-39).  By way of background, Hatten pointed out, "Prior to being indicted in this case, he was gainfully employed as an Enforcement Agent for the State of Ohio Investigative Unit for over five (5) years."[2]  (Doc. #7, Exh. 9, PageID at 130).

The State countered that the evidence was sufficient to prove both "force" and "deception" under Ohio's kidnapping statute because "A.R. testified that when she walked to the door to leave Hatten's home, he 'followed me to the door and when I got to the door he put his arm across the doorway so I could not get out and told me just to stay and we would cuddle.'  Hatten admitted to the police that this is 'more or less' what happened."  *Hatten*, 186 Ohio App.3d at 299; *see* Doc. #7, Exh. 12, PageID at 230.

Although the Ohio Court of Appeals found the evidence insufficient to establish the element of "deception," it found the evidence sufficient to establish the element of force.  It reasoned:

> "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.

---

[2]  The Investigative Unit is a division of the Ohio Department of Public Safety.

2901.01(A)(1)....

A.R. claimed that she did not persist in trying to leave because Hatten is significantly larger than she, and she believed that he would continue to block the door and refuse to let her leave.  She then explained that she decided to stay because "I thought if he had been drinking that he would be ready to pass out soon and if I just laid with him for a little while he would eventually pass out and I would be able to leave."...  [T]his evidence is sufficient to prove that Hatten restrained A.R.'s liberty by force. *See, e.g., State v. Wade,* Franklin App. No. 06AP–644, 2008-Ohio-1797, 2008 WL 1723671 (defendant blocked doorway, refusing to let his much smaller victim leave).

Alternatively, the state insists that the kidnapping charge could be based upon Hatten's using force to pull A.R. down the hall by her arm. Pulling a victim down a hallway is sufficient evidence of forcible removal of the victim to support a kidnapping conviction. *See, e.g., State v. Garcia* (Feb. 7, 2002), Cuyahoga App. No. 79281, 2002 WL 192087.  A.R. testified that Hatten pulled her, by the arm, down the hallway from the living room to the bedroom. Thus, the evidence is sufficient to warrant putting the charge before the jury. Hatten argues that A.R.'s testimony that she was pulled down the hall was not believable. However, the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212.

Based on the record before us, we conclude that there was sufficient evidence to warrant submitting the kidnapping charge to the jury.... Consequently, we will not disturb the jury's verdict on the kidnapping conviction.

*Hatten*, 186 Ohio App.3d at 299-300; *see* Doc. #7, Exh. 12, PageID at 230-31.

**C.    Analysis**

Hatten argues in the instant case that the evidence presented at trial does not prove

beyond a reasonable doubt that he committed the act of kidnapping against A.R.  He

points out that there is no need to look at the witnesses' "credibility to determine that the

factual determination was erroneous." (Doc. #9, PageID at 1632). He then provides his fair assessment of the facts or, in other words, "how ... [he] views the evidence presented to the jury and its lack of sufficiency for a conviction." *Id*. at 1632-35. Under the heading, "Blocking the door," Hatten asserts, in part:

> None of the witnesses in the home testified that A.R. screamed for help. If Petitioner drug her down the hall and she didn't want to go, she should have screamed for her friend. There is no evidence of this behavior.... Regardless of if her friend would have heard her, there were still two other individuals in the home that would have heard A.R.'s screams and could have helped her or intervened to prevent any such rape. While these individuals may not have been as close in friendship to A.R. as her friend next door, there is no evidence to the contrary that these two individuals who were present wouldn't try to help in such a situation.

*Id*. at 1637 (footnote added).

Hatten's fair view of the evidence overlooks or ignores much of the trial testimony by A.R. that must be viewed "in the light most favorable to the prosecution" under *Jackson*, 443 U.S. at 319; *see Davis*, 658 F.3d at 531. And A.R.'s testimony and credibility cannot be reweighed or redetermined in this federal habeas case. *Mathews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003); *see Jackson*, 443 U.S. at 319 (the applicable "standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Viewed with such deference, A.R.'s testimony is sufficient to convince "*any* rational trier of fact" beyond a reasonable doubt that Hatten used "force" upon A.R. in violation of Ohio's kidnapping statute. *See Jackson*, 443 U.S. at 319; *see also Davis*, 658 F.3d at 531 (discussing *Jackson*).

12

A.R. testified that, as a basic factual matter, Hatten followed her to the door "and when I got to the door he put his arm across the doorway so I could not get out and told me to stay and we would cuddle." (Doc. #7, Exh. 30, PageID at 926). The prosecutor asked A.R., "did you believe you were free to leave on your own free will?" *Id.* at 927. A.R. answered, "No. I thought he would block the door any way I tried to move." *Id*. This scene at the door lasted "maybe five minutes" during which A.R. "was telling him that I wanted to go home and he was trying to get me to stay." *Id*. at 929.

At that point, according to A.R., Hatten had not given her any reason to believe that something would happen against her will – other than staying in a place (Hatten's house) where she did not want to be. *Id*. at 930. After the door incident, A.R. and Hatten went back to the couch and sat for a little while. A.R. testified, "he had his arm around me. And then he stood up and grabbed my arm and led me to the bedroom." *Id*. A.R. did not consent to Hatten's act of grabbing her arm. *Id*. at 930-31. She further explained, "He stoop up and as he stood up he reached for my arm around the wrist and pulled me." *Id*. at 931. Hatten then said, "Let's go to the bedroom and lay down," and A.R. responded by telling him she did not want to go. *Id*. She "tried to go the other way" but did not succeed. *Id*. Hatten told A.R. that they "were just going to cuddle," but she did not believe him "[b]ecause if that's all he wanted to do was cuddle we could have done that on the couch." *Id*. At this point in time, A.R.'s testimony constituted sufficient evidence to show that Hatten used force to restrain her liberty against her will and to pull her down the hallway to the bedroom against her will.

A.R. testified that after they reached the bedroom, they laid on the bed, and Hatten rolled on top of her and "straddled [her] with his knees on the bed up by [her] hips, kind of sitting on [her] legs." *Id*. at 932.  A.R. told the jury, "He was basically sitting on me.  I could roll my shoulders to the side, but I couldn't move the rest of me to get away." *Id*. She, moreover, "told him [she] wanted to go home and I tried to roll away and couldn't." *Id*. at 933.  She did not consent to being on the bed and "wanted to leave." *Id*.  In short, Hatten stopped A.R. from leaving the bed and the bedroom – he restrained her liberty against her will. *Id*.  By his acts, Hatten forcibly placed A.R. into a position from which she could not prevent him from engaging in nonconsensual sexual activity.  And Hatten then engaged in the sexual activity described by the Ohio Court of Appeals. *Supra*, §II(A).  But A.R. had already told Hatten that she wanted to leave and had attempted "to roll away and couldn't."  (Doc. #7, Exh. 30, PageID at 933).  She "became panicky trying to leave and telling him no," and she started crying. *Id*.  A.R. did not consent to Hatten's subsequent sexual activity with her. *Id*.

In light of the above-reviewed aspects of A.R.'s testimony, viewed in the light most favorable to the prosecution, the trial evidence against Hatten established that he used physical force first to block A.R. from leaving the house against her will; next to take her to the bedroom against her will; then to pin her legs, and effectively her body, to the bed thereby defeating her effort to roll out from underneath him in order to engage in sexual activity against her will.  Consequently, based on A.R's testimony, any rational trier of fact could conclude beyond a reasonable doubt that Hatten kidnapped A.R. in

violation of Ohio Rev. Code § 2905.01(A)(4) by using force to restrain her liberty in order to engage in sexual activity with her against the her will.  Because of this, the twofold *Jackson*/AEDPA deference applies:  first, the jury's determination that Hatten was guilty of kidnapping is entitled to deference under the standards set by *Jackson*, 443 U.S. at 319; second, the Ohio Court of Appeals did not unreasonably apply *Jackson's* standards when rejecting Hatten's insufficient evidence claim.  *See Davis*, 658 F.3d at 531.

Hatten's reliance on other evidence and testimony to support his "fair assessment of the facts" does not alter or extinguish the above aspects of A.R.'s testimony.  Even though some of Hatten's relied-on evidence presented a viable factual theory contrary to A.R.'s testimony, her testimony is sufficient under *Jackson* to support Hatten's kidnapping conviction regardless of other evidence in the trial record possibly supporting his defense.  Under *Jackson* "[t]he prosecution lacks an 'affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt....'"  *White v. Steele*, 602 F.3d 707, 709 (6th Cir. 2009) (quoting, in part, *Jackson*, 443 U.S. at 326).

* * *

Hatten also contends that the evidence was insufficient to support his kidnapping conviction because the prosecution "failed to establish a factual foundation that Petitioner intended to engage in any sort of sexual activity with A.R., much less non-consensual sexual activity."  (Doc. #10, PageID at 1642).  Hatten points to both the Ohio Court of Appeals' decision vacating his conviction of rape of a substantially impaired person, and

the fact that the "jury wrongfully convicted him of engaging in sexual activity with a substantially impaired person." *Id*. Hatten reasons:

> The jury incorrectly believed that Petitioner knew A.R. was impaired to consent to sexual activity at the moment she agreed to stay and cuddle – the alleged moment of restraint for the kidnapping offense. The state court of appeals makes clear that Petitioner had no such knowledge of impairment. Therefore, it is impossible Petitioner could have known that any potential sexual activity with A.R. would have been against her will due to a substantial impairment. Since Petitioner did not know A.R. was substantially impaired he could not have intended to have non-consensual sex with her.

*Id*.

The validity of Hatten's reasoning lives or dies on his conclusion that the Ohio Court of Appeals' decision established the basic fact that A.R. consented to engaging in sexual activity with Hatten. If she consented, so his thinking goes, then he did not restrain her against her will and his kidnapping conviction cannot stand. Hatten therefore characterizes as "incongruent" the Ohio Court of Appeals' decision to vacate his rape conviction but affirm his kidnapping conviction. He argues, "It makes absolutely no sense that there was force used for the kidnapping charge but the sex was consensual." (Doc. #10, PageID at 1644).

Hatten's reasoning is flawed because it misperceives the Ohio Court of Appeals' decision to vacate his conviction of rape of a substantially impaired victim. The Ohio Court of Appeals vacated his rape conviction based on the conclusion that the prosecution presented insufficient evidence to establish that Hatten knew, or should have known, A.R. was substantially impaired. *Hatten*, 186 Ohio App.3d at 294-298; Doc. #7, Exh. 12,

16

PageID at 223-29.  Neither this conclusion nor the Ohio Court of Appeals' reasoning establishes that A.R. consented – as a basic fact – to sexual activity with Hatten.  *See id.* The Ohio Court of Appeals later explained this in its rejection of Hatten's Motion for Reconsideration:

> Consent is not an element of rape of a substantially impaired person, the charge which Hatten was convicted.  The jury's finding of guilt on the charge of rape of a substantially impaired victim indicates a finding that the victim was incapable of consenting, *not that she did consent*.  Similarly, our reversal of Hatten's conviction for rape of a substantially impaired person does not mean that the sexual conduct was consensual.  Our reversal was based upon our conclusion that the conviction was not supported by sufficient evidence that Hatten knew or should have known that the victim was substantially impaired.

(Doc. #7, Exh. 15, PageID at 259)(emphasis added).  For these reasons, the Ohio Court of Appeals' decision did not establish the basic fact upon which Hatten relies – that A.R. consented to sexual activity.  And, as explained previously, the evidence was sufficient under *Jackson* support Hatten's kidnapping conviction because any rational trier of fact could conclude from A.R.'s testimony that he not only used "force" to restrain her liberty, he did so in order to engage in sexual activity against her will.

* * *

In conclusion, the prosecution produced sufficient evidence at trial against Hatten, when viewed in the prosecution's favor as required by *Jackson*, 443 U.S. at 324, to convince any trier of fact beyond a reasonable doubt that Hatten is guilty of kidnapping. In addition, the Ohio Court of Appeals' decisions on his direct appeal and when denying Hatten's motion for reconsideration were not contrary to, and did not involve an

17

unreasonable application of federal law, as established by the U.S. Supreme Court.

Accordingly, habeas corpus relief is unavailable to Hatten.

## IV.    Certificate of Appealability

Before a petitioner may appeal a denial of his habeas petition, he must first obtain a certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  A certificate of appealability issues when the petitioner makes a substantial showing of the denial of a constitutional right.  *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595 (2000).

When the district court has dismissed a habeas petition on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484, 120 S.Ct. at 1604.  For the reasons stated herein, the conclusion that Hatten's insufficient-evidence claim fails to provide him with relief under the AEDPA is not debatable by jurists of reason, and his claim does not otherwise present issues adequate to deserve encouragement to proceed further.  Consequently, a certificate of appealability should not issue in this case.

### IT IS THEREFORE RECOMMENDED THAT:

1.    Justin Hatten's petition for writ of habeas corpus (Doc. #2) be DENIED and DISMISSED;

2.    Hatten's request for relief in the forms of discovery and an evidentiary hearing (Doc. #2, PageID at 17) be DENIED as moot;

3.    Hatten be DENIED leave to appeal *in forma pauperis*, and the Court CERTIFY under 28 U.S.C. §1915(a)(3) that any appeal Hatten seeks to take from a Decision and Entry adopting this Report and Recommendation is not

taken in good faith;

4.     Hatten be denied a certificate of appealability under 28 U.S.C. §2253(c); and

5.     The case be terminated on the docket of this Court.


December 7, 2012

                                            s/Sharon L. Ovington
                                                Sharon L. Ovington
                               United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).